MARY E. FORD, APPELLEE, v. THE METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.

Submitted July 2, 1909—Decided October 23, 1909.

An insurance policy contained the following clause: "After two years this policy shall be non-contestable except for non-payment of premiums as stipulated, or fraud." The insured, in his application for insurance, declared that he had never been sick, and that he had not been under the care of any physician within two years. There was testimony that the insured had, about twenty-one months before the issuing of the policy, consulted a physician, who said the insured had a rash which the physician diagnosed as caused by syphilis, but did not so inform the insured. The insured was otherwise in good health. *Held*, that it was a question for the jury whether the declarations in the application were fraudulently made.

On appeal from the Camden District Court.

Before Justices REED, BERGEN and VOORHEES.

For the defendant and appellant, *Lewis Starr.*

For the plaintiff and appellee, *John H. Switzer* and *Howard L. Miller.*

The opinion of the court was delivered by

REED, J. The defendant, the Metropolitan Life Insurance Company, on June 30th, 1906, wrote a policy upon the life of Henry T. Ford, who died July 16th, 1908. The policy contained this clause: "After two years this policy shall be non-contestable except for the non-payment of premiums as stipulated, or fraud."

One of the grounds assigned for reversal is that the insured, in his application, declared that he had never been sick, and that he had not been under the care of any physician within two years.

The only testimony to the effect that the insured had been

sick before June 30th, 1906, or that he had been under the care of a physician before that date, was the testimony of Doctor Bailey, who said that between April, 1902, and October 12th, 1904, the insured came occasionally to see him, and that the insured had a rash, which rash he diagnosed as the result of syphilis. He says, however, that he never told Ford that he had had syphilis.

The testimony of other physicians was based upon examinations made some time after the policy was written, and their diagnosis was based mainly upon information received from Doctor Bailey.

Doctor Bailey himself would not swear that the diagnosis he made was absolutely correct. The insured always denied any knowledge of any cause for the acquisition of that disorder. Respecting his general physical condition, Doctor Bailey says he was a healthy fellow, otherwise than the existence of the rash.

The trial judge left to the jury the question whether the representations made by Ford were fraudulently made, and the jury found they were not.

The counsel for the appellant insists that the facts of the sickness, and of the attendance of a physician, were such that the insured could not have forgotten them when he made his application, and so it must be a legal conclusion that he intended a fraud upon the company when he made his answers to the questions propounded to him in his application.

We are of a different opinion, and think the question of his intention was one for the jury.

Again, it is assigned as a reason for reversal, that of the different statements made by the plaintiff to the company after the death of the insured, only the statements of two definite physicians were offered in evidence by the plaintiff, and that three others were withheld; but all three statements were put in evidence by the defendant, and so the ground for nonsuit, if it ever existed, disappeared.

It is also insisted that there was error in permitting Doctor Branch, upon cross-examination, to testify that he had never

known Ford to be sick, except that he was confined to the house.

Doctor Branch testified that he saw Ford twice in 1900 and treated him for headache, which he thought came from cerebral tumor, and that he thought Ford's disorder dated back a year before he saw him. This conclusion was based upon information he got from Doctor Bailey after Ford's death. Doctor Branch had already said that he knew Ford for some years, and the doctor was then asked whether he ever knew him to be sick, except that he was confined to the house. This reference to confinement to the house evidently alluded to the confinement of Ford in the Blackwood Insane Almshouse Hospital, at Blackwood, to which Ford was committed on July 4th, 1908. To the question so propounded, Doctor Branch answered "No," the court ruling that in making this answer, the defendant made him its own witness.

This evidence was relevant upon the question of the fraud of the insured in making his statement in his application for insurance. If it were true that he had never been known to be sick, there is less likelihood that his statements were made by him with intention to deceive the company.

Again, it is insisted that it was error to permit Doctor Donges to answer the question: "What is meant by 'the physician in attendance upon you?'" A. "Medical attention is when you take care of a man. It does not make any difference whether you go to his home or whether he comes to you, and he takes your remedies, or you apply surgery to him, or medical treatment."

It is difficult to see how the defendant can complain of this answer, for the doctor gave the widest scope to the phrase "physician in attendance," which was favorable to the defendant. Besides the question in the case was how the insured understood the question, and whether he by his answer fraudulently misled the company. There was no injurious error in this question and answer.

Indeed, the objections taken to the different questions propounded to the witness respecting the general health of the insured, rest upon the notion that the warranties contained

in the application could not be modified by evidence of general robust health; while in fact the defendants were precluded from treating these representations as warranties, because the interval of two years between the execution of the policy and the death of the insured had occurred, and stripped the defendants of the right to interpose any defence except the fraud of the insured, or the non-payment of premiums.

The judgment below should be affirmed.